## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Maite M. Rentas, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI). I am assigned to the Immigration Crimes Group in San Juan, Puerto Rico. As a Special Agent with HSI, I am authorized by law to investigate crimes involving violations of Title 18, Title 8, and Title 19 of the United States Code and to execute warrants issued under the authority of the United States. I have been employed as an HSI Special Agent since February 2025. Prior to my appointment as a HSI Special Agent, I was assigned in 2023, as a Special Agent with the United States Secret Service, San Juan Resident Office.

2. I successfully completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. I received training in conducting criminal investigations, methods of investigation, and criminal investigations involving computers and different access devices.

3. I completed the HSI Special Agent Training Program in FLETC Charleston, South Carolina for approximately 12 weeks where I was extensively trained in academic and practical applications in financial crimes, drug trafficking, weapons, human trafficking, child exploitation, document and identity fraud, immigration and other offenses.

4. I am authorized to investigate violations of laws of the United States and to execute and serve any order, subpoena, summons, warrant, or other process issued under the authority of the United States. As a Special Agent, I am familiar with the statutes of the United States Code, and as a federal law enforcement officer, I have participated in investigations, surveillance, interviews, interrogations, arrests, searches, seizures, administration of oaths, and in taking and considering

evidence concerning the privilege of any person to enter, reenter, pass through, or reside in the United States. Based on my law enforcement experience detailed herein, as well as my training, and experience of other law enforcement officers who are participating in this investigation, serve as the basis for the conclusion set forth herein.

5. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and does not set forth all of my knowledge about this matter.

6. I make this affidavit based on my own personal knowledge and on oral and written reports by other federal, state, and/or local law enforcement agents and officers that investigated this matter. This affidavit does not contain all the information derived from this investigation only that which is sufficient to demonstrate probable cause to believe that a crime has been committed. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of 8 U.S.C. § 1324 (a)(1)(A)(i) – *Bringing in aliens to the United States* has been committed by Fedor VOVK ("VOVK") and Aleksei KONDRATEV ("KONDRATEV").

## PROBABLE CAUSE

7. On or about, Sunday, October 12, 2025, a notification was received from the "Direccion de Inteligencia Naval" from the Dominican Republic with regards to a vessel of interest. The vessel had the registered name "Liberty" (LIBERTY).

8. The Dominican Republic notification indicated that LIBERTY departed from La Romana port purportedly enroute to Antigua and Bermuda. The passenger manifest indicated that there were thirteen (13) passengers aboard LIBERTY. The passengers included 10 males of Uzbek nationality, 1 female of Kyrgyz nationality and 2 males from Russian nationality.

9. Continuing that same day, at approximately 0839 hours, United States Customs and Border Protection (CBP), Michel Maceda Mayaguez Unit (MMMU) received information from the

Caribbean Air and Marine Operation Center (CAMOC) regarding a vessel traveling east, located at approximately twenty-nine (29) nautical miles west of Cabo Rojo, Puerto Rico.

10. At approximately 1000 hours and twenty-four (24) nautical miles, the United States Coast Guard Cutter (USCGC) Hernandez visually identified the vessel as LIBERTY.

11. MMMU and (USCGC) Hernandez coordinated the interception of LIBERTY, once it reached one (1) nautical mile of the coast of Boquerón, Puerto Rico.

12. At approximately 1555 hours, at approximately .8 nautical miles, while LIBERTY maintained its course towards the coast of Cabo Rojo, Puerto Rico, MMMU activated the blue law enforcement lights and siren. MMMU officer gave LIBERTY verbal commands in English and Spanish to "stop the vessel". LIBERTY complied with the commands.

13. MMMU agents confirmed to HSI agents that during their interdiction, VOVK was observed standing behind LIBERTY's wheel, confirming that VOVK is LIBERTY's operator. In addition, VOVK navigated LIBERTY to the port while being escorted by MMMU.

14. An MMMU agent identified himself as a law enforcement officer while wearing police markings in a marked law enforcement vessel and proceeded to conduct an initial interview with LIBERTY's operator VOVK. VOVK identified himself with the MMMU agents as LIBERTY's operator. VOVK indicated to MMMU agents that they departed from the Dominican Republic coasting close to the shore of Puerto Rico enroute to Antigua and Barbuda.

15. VOVK stated to HSI agents that he was navigating LIBERTY towards Puerto Rico to avoid strong winds the vessel was facing after passing south of Isla De Mona.

16. According to documents, LIBERTY is registered as vessel with a "Watercraft Registration Certificate" from the Republic of Poland.

17. During the interdiction, it was observed that LIBERTY was displaying the flag of Poland. LIBERTY was also displaying the flag of the United States as a courtesy flag, usually indicating the intentions of the vessel coming into a country. In addition, a courtesy flag is an indicator that the vessel will respect the laws and sovereignty of the country about to be entered.

18. MMMU agents requested LIBERTY's registration along with the passports of all passengers on board. LIBERTY was escorted to the MMMU facility in Boquerón, Cabo Rojo, Puerto Rico for further inspection.

19. During the inspection conducted at the MMMU facility and due to the lack of visas or documents that would allow them to apply for admission or remain in the United States, all passengers were detained and transported to the U.S. Border Patrol (USBP) Ramey Sector facility located in Aguadilla, Puerto Rico.

20. On or about October 13, 2025, all thirteen (13) detainees were transported from USBP Ramey Sector facility in Aguadilla, Puerto Rico, to the Enforcement Removal Operations (ERO) office located in Guaynabo, Puerto Rico for further investigation and processing.

21. At the ERO office, photographs and fingerprints of all passengers were taken and entered different law enforcement databases. Databases confirmed that none of the thirteen 13 passenger's onboard LIBERTY had legal status to enter or be present in the United States.

22. On or about October 15, 2025, Federal Bureau of Investigations (FBI) and HSI agents interviewed VOVK at the General Service Administration (GSA) San Juan Staging Facility located at Guaynabo, Puerto Rico. VOVK was administered the Miranda rights in English and Russian and agreed to waive his rights to an attorney and answer the agents' questions.

23. During the interview conducted with VOVK, the following facts were gathered:

   a. Stated that he was aware that he was sailing towards Puerto Rico.

    b. Confirmed that passengers were brought in a bus altogether to the departing port in the Dominican Republic.

    c. Affirmed that prior to boarding LIBERTY, he asked the passengers if any of them were armed with any weapons or in possession of narcotics.

    d. Prior to boarding LIBERTY, he requested and inspected all the passengers' travel documentation. Subsequently, he provided them to the Dominican Republic authorities for official stamp showing country departure.

    e. Stated that KONDRATEV (LIBERTY's first mate) is his stepson and arrived from Cuba one (1) week before the trip to the Dominican Republic.

    f. Stated that the passengers were informed that they were responsible for acquiring the supplies they would consume during the trip, in addition to a contribution for gas.

    g. During the interdiction, he provided law enforcement officers with the passengers' passports.

    h. Confirmed that LIBERTY was displaying a small United States flag as sign of respect.

24. On or about October 15, 2025, Material Witness 1 (MW1) was interviewed at HSI Antilles office located in San Juan, Puerto Rico by HSI agents. During the interview, the following facts were gathered:

    a. Confirmed the purpose of the trip was to enter Puerto Rico.

    b. Affirmed that the trip had a cost of $11,000 USD.

    c. On or about October 11, 2025, a van picked up all the passengers from two hotels in the Punta Cana, Dominican Republic area and after driving for approximately one (1) hour, they were dropped off at a port.

    d. Confirmed that MW1 met VOVK on or about October 11, 2025, the same day LIBERTY departed from the Dominican Republic.

    e. Confirmed that VOVK requested all the passengers' passports (travel documents) and cellphones prior to departing the port.

    f. Affirmed VOVK and KONDRATEV maintained custody of the passengers' passports and cellphones during the trip.

    g. Affirmed that MW1 saw the law enforcement boats approach LIBERTY near the coast of Puerto Rico.

    h. Upon seeing the law enforcement boats, MW1 claimed that KONDRATEV returned the cellphones to the passengers. Subsequently, MW1 stated that she deleted the conversations regarding the trip.

25. On or about October 17, 2025, via separate photo line-ups, MW1 identified VOVK as the captain of LIBERTY and KONDRATEV as his assistant.

26. On or about October 17, 2025, via separate photo line-ups, Material Witness 2 (MW2) identified VOVK as the captain of LIBERTY and KONDRATEV as his assistant.

## CONCLUSION

27. Based upon my training, experience, and based on the facts revealed in this investigation, I believe that sufficient probable cause exists to demonstrate the commission of a violation of federal law by the above-mentioned subjects, to wit, a violation of This Affidavit is made in support

of a Criminal Complaint against Fedor VOVK and Aleksei KONDRATEV based on violation of Title 8, United States Code, Section 1324(a)(1)(A)(i) – Bringing Aliens to the United States.

Respectfully submitted,

_____
MAITE M RENTAS RAMOS
Digitally signed by MAITE M RENTAS RAMOS
Date: 2025.10.27 11:41:56 -04'00'

Maite M. Rentas Ramos
Special Agent
Homeland Security Investigations

Sworn by telephone pursuant to the requirements of Federal Rules Procedures 4.1 on this 27th day of October 2025, at 1:43 p.m.

_____
Digitally signed by Hon. Giselle López-Soler

Hon. Giselle López-Soler
United States Magistrate Judge
District